UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD BOOTH,<br><br>    Petitioner,<br><br>vs.<br><br>DARREL ADAMS, Warden,<br><br>    Respondent. | Civil No. 10-cv-2361-JLS(CAB)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE:**<br><br>**(1) TO DENY MOTION FOR STAY AND ABEYANCE OF PETITION FOR WRIT OF HABEAS CORPUS; and**<br><br>**(2) TO DISMISS PETITION *SUA SPONTE***<br><br>**[Dkt No. 7]** |

  Proceeding *pro se* and *in forma pauperis* with a 28 U.S.C. § 2254 Petition For Writ Of Habeas Corpus, state prisoner Edward Booth ("Booth") seeks relief from his September 2005 convictions by a jury in Imperial County Case No. JCF-14228 of seven criminal counts, including first degree murder, and from his sentence of 94 years to life in prison. With leave of court, he filed his First Amended Petition ("2010 Petition") to name a proper respondent. (Dkt Nos. 4, 5.) The matter is before the Court on Booth's February 18, 2011 Motion For Stay And Abeyance ("Motion"). (Dkt No. 7.) Respondent filed an Opposition to the Motion. (Dkt No. 12.) Booth did not reply.

  For the reasons discussed below, it is recommended the Motion be **DENIED**. It is further recommended the Court **DISMISS** the Petition *sua sponte,* with prejudice, as presenting only time-barred and procedurally defaulted claims. These recommendations are made in consideration of the

denial in August 2009 of Booth's motion to stay his prior federal habeas petition advancing the same claims, dismissal of that petition without prejudice, and subsequent procedural history in state court.

## I. BACKGROUND

### A. Prior Federal Proceedings

The 2010 Petition states the same grounds for relief as Booth had presented in a federal habeas petition he filed December 31, 2008 as Case No. 08cv2442-JAH(CAB) ("2008 Petition"). (*Compare* 08cv2442-JAH(CAB) Dkt No. 1, 5:10-6:18, *with* 10cv2361-JLS(CAB) Dkt No. 1, 14:7-15:4, Dkt No. 5-1, 3:7-4:4.)[1] At the time he filed his 2008 Petition, Booth also moved "to stay in abeyance exhausted issues to resolve eleven federal constitutional unexhausted claims before the lower state courts on issues of federal constitutional claims now raised before this court." (2008 Petition, Dkt No. 1-1, 5:11-13; *see* Id. pp. 22-24.) He acknowledged there that only his claim challenging his allegedly unconstitutional upper term sentence was then exhausted. Booth filed a brief in February 2009, in response to the Court's notice of the showing he had to make in order to justify a stay and abeyance procedure. (Id., Dkt Nos. 3, 6.) Respondent opposed the motion. (Id., Dkt No. 9.) This Court's Report and Recommendation ("R&R") to deny the motion issued on March 13, 2009, and was followed by Booth's March 27, 2009 Reply to Respondent's Opposition. In response to his Reply, the Court prepared a supplemental R&R addressing and rejecting the materiality of his contention -- asserted for the first time in that filing and unsubstantiated by proper evidence -- that he had taken certain action in July 2006 that purportedly affected the exhaustion analysis. The Court again recommended the motion to stay be denied and the mixed petition be dismissed. (Id., Dkt No. 17.) Booth filed objections to the R&R, arguing good cause existed for his failure to exhaust unexhausted claims, but he withdrew his objections on June 24, 2009. (Id., Dkt No. 24, 3:19-23.)

In its August 12, 2009 Order adopting both R&Rs, the Court denied stay and abeyance and dismissed the 2008 Petition without prejudice. (2008 Petition, Dkt No. 24, 5:5-8, 5:19-21, *citing* Rhines v. Weber, 544 U.S. 265, 275, 277-78 (2005).) The Court observed Booth "provides no explanation for failing to exhaust his eleven unexhausted claims." (Id. 5:7-8.) The Court instructed: "Petitioner is advised of the following options for further proceedings in this case: (1) re-filing without

---

[1] Cited page numbers of docketed materials refer to those electronically-imprinted.

the unexhausted claims; . . . (2) <u>re-filing upon exhaustion of unexhausted claims</u>." (<u>Id.</u> 6:24-25, 7:17.) The Court described how to proceed with each of those options and the consequences of each choice. (<u>Id.</u>, 6:24-8:3.) In a September 1, 2009 Motion To Dismiss Habeas Petition, Booth selected the option of dismissing his federal habeas petition to pursue exhaustion of state remedies. The Court denied that motion as moot because it had already adopted the R&Rs to dismiss the case before hearing from him. (<u>Id.</u>, Dkt Nos. 25-28.) Judgment was entered accordingly. (<u>Id.</u>, Dkt No. 25.) This record nonetheless reflects Booth formally chose dismissal with knowledge of the following potential consequence:

> <u>Consequences of selecting Option (2)</u>: If petitioner elects to dismiss this case by filing a "Motion to Dismiss Habeas Petition in Order to Exhaust State Court Remedies," this Court will dismiss the present action without prejudice to Petitioner's refiling, in the future, a petition which contains only exhausted issues. <u>See</u> <u>Stewart v. Martinez-Villareal</u>, 523 U.S. 637, 644-45 (1998); <u>In re Turner</u>, 101 F.3d 1323 (9th Cir. 1997). **However, the Court cautions petitioner that all his claims may be barred by the statute of limitations if he chooses this option**.

(2008 Petition, Dkt No. 24, 7:25-8:3) (emphasis added).)

Booth thereafter initiated several state court proceedings. He then filed his 2010 Petition reasserting his original federal claims.[2] He now moves to stay consideration of those claims, again for the stated purpose of exhausting state court remedies. (Dkt No. 7.)

  **B.**  **<u>Judicial Proceedings Before 2008 Petition Dismissal</u>**

The Court takes judicial notice of the procedural summary from the August 12, 2009 Order denying Booth's motion to stay his 2008 Petition and extracts the following history. Booth was convicted by a jury on September 2, 2005 of one count of first degree murder, two counts of attempted murder, two counts of assault with a semiautomatic firearm, and two counts of criminal threats. On December 9, 2005, the court denied his new trial motion and sentenced him to a total of 122 years to life in prison. Booth argued on direct appeal: (1) he was denied jury findings to support the upper

---

[2] Booth claims: (1) ineffective assistance of appellate counsel for failure to raise federal constitutional claims on direct appeal; (2) ineffective assistance of trial counsel; (3) trial court sentencing error; (4) abuse of discretion in denying his new trial motion; (5) abuse of discretion in admitting autopsy photo evidence; (6) abuse of discretion in permitting the prosecution to cross-examine a witness concerning a prior misdemeanor; (7) abuse of discretion in excluding evidence of a wallet located at the crime scene; (8) abuse of discretion in permitting the prosecution to impeach Booth about a prior murder charge of which he was never convicted; (9) denial of a jury of his peers due to exclusion of African-Americans; (10) equal protection violation through discriminatory exclusion of blacks from the jury selection process; and (11) a state evidence code violation.

term and consecutive sentences imposed; and (2) his sentence of 25 years to life on Count Four and his sentence of three years on Count Seven were not authorized under the applicable criminal statutes. The Court of Appeal affirmed the judgment on November 7, 2006, but modified the sentences for Counts Four and Seven. On January 17, 2007, the California Supreme Court denied Booth's Petition For Review of that decision, without prejudice to his seeking any relief to which he might be entitled after the United States Supreme Court decided a then-pending case challenging the constitutionality of California's sentencing scheme. (*See* 2008 Petition, Dkt No. 24.)

On April 24, 2007, after the decision in Cunningham v. California, 549 U.S. 270 (2007), the Court of Appeal reversed the judgment in part and remanded Booth's case for a new sentencing hearing. On June 1, 2007, Booth petitioned the California Supreme Court for review of his sentence. On September 12, 2007, the California Supreme Court transferred the case to the Court of Appeal for reconsideration in light of new case law. On October 17, 2007, in a third opinion, the Court of Appeal reversed the judgment and remanded to the trial court for re-sentencing. On November 20, 2007, Booth petitioned the California Supreme Court for review of his re-sentencing, a petition denied on January 3, 2008. (*See* 2008 Petition, Dkt No. 24, 2:20-3:4.) On December 31, 2008, he initiated his first federal habeas action, concluding with dismissal of the 2008 Petition on August 12, 2009.

### C.     Judicial Proceedings After Dismissal Of Booth's 2008 Petition

In his Opposition to Booth's Motion to stay his 2010 Petition, Respondent provides the Court with the procedural history after Booth's 2008 Petition was dismissed, supported by exhibits filed concurrently with the Opposition and undisputed by Booth. (*See* Dkt Nos. 12-1, 12-1.) Pertinent portions of that record reveal that on December 18, 2009, just over four months after the dismissal of his federal petition, Booth filed a habeas petition in Imperial County Superior Court, Case No. EHC01273, alleging his appellate counsel failed to raise 12 federal issues on direct review. He also presented five claims that had been raised in a new trial motion, including allegations that: his counsel should have looked into the jury commissioner's application of venire hardship qualifications because no African-Americans were on the panel; his counsel should have investigated a wallet found at the crime scene; an autopsy photo of the victim was improperly admitted at trial; and he and another trial witness were improperly impeached. (Dkt No. 12-1, 15:1-11.)

The Superior Court found the petition did "not include the appellate brief, except apparently some pages of it, as part of his exhibits," and Booth did not "list the claimed twelve federal issues, as such, in his petition." (Id., 15:1-4.) Concerning the issues associated with counsel's other alleged failures, the court found Booth did not address the trial court's reasoning, he did not demonstrate any legal error in the denial of the new trial motion other than in conclusory terms, and he did not demonstrate any prejudice, that is, "a reasonable probability that the result of trial would have been more favorable to petitioner given any or all of the issues raised in the new trial motion," foreclosing an ineffective assistance of counsel finding. (Id., 15:12-20); *see* Strickland v. Washington, 466 U.S. 668 (1984). The Superior Court also found Booth "does not cite to any Imperial County statistics which would indicate that his trial attorney could have made a prima facie case . . . by being present at the hardship qualifications" processing of potential jurors. (Id., 16: 17-22.) Concerning the "other issues variously raised in his petition," the court found "petitioner does not provide any record of the trial or appellate proceedings which would support his claims." (Id., 17:9-10.) The court denied the petition in its entirety on January 27, 2010, "for failure to make out a prima facie case." (Id., 17: 19.)

On February 22, 2010, Booth filed a habeas petition in the California Supreme Court, Case No. S180481. (Dkt No. 12-1, pp. 20-67.) He presented there the eleven federal claims he had asserted in his 2008 Petition here. On April 30, 2010, while that petition was pending, Booth filed a petition for writ of mandate in Imperial County Superior Court, seeking leave to obtain post-judgment discovery of statistical records regarding composition of the jury pool in July and August 2005, perhaps in an attempt to remedy the foundational deficiency that court had identified in his jury pool allegations. (*See* Dkt No. 12-1, 121:17-19.) The Superior Court construed that petition "as a reconsideration of the denial of habeas corpus" entered January 27, 2010 and denied relief on June 22, 2010, stating:

> 1. It does not make out a prima facie case for relief under the statute procedurally. He does not have an L.W.O.P. sentence under Penal Code section 1054.9(a) [a provision permitting post-judgment discovery in death penalty and life without the possibility of parole cases.]
>
> 2. The materials he seeks were not available at trial as his trial attorney did not pursue the issue nor did his appellate attorney raise the issue.
>
> 3. **The petition is untimely and the issues raised have been repeatedly waived**.

> 4. In so far as, in his previous habeas petition, this court rejected claims as to ineffective assistance of trial and appellate counsel, petition[er] cannot pursue the matter, as he cannot make out a prima facie case, via back door discovery, that his trial attorney should have obtained the materials.

(Dkt No. 12-1, 122:7-15 (emphasis added).)

On July 19, 2010, with his habeas petition still pending in the California Supreme Court, Booth filed a Writ of Mandamus in the state Court of Appeal, seeking the same post-judgment discovery as the Superior Court had denied him. (Dkt No. 12-1, pp. 126-147.) The Court of Appeal summarily denied the writ. (Id., p. 177.) On August 12, 2010, Booth filed a petition for writ of mandamus in the California Supreme Court, contending the Court of Appeal had abused its discretion and failed to make an impartial ruling in denying him that discovery.[3] (Dkt No. 12-2, pp. 2-62.) He represented there that the federal court had determined his jury pool claim "has merit." (Id., 5:8-22.) He attached this Court's R&R to deny his Motion To Stay the 2008 Petition, a document which in fact does not address the merits of any of his claims. (*See* Id., pp. 99-104.) The California Supreme Court transferred that matter to the Court of Appeal "for consideration in light of *Hagan v. Superior Court* (1962) 57 Cal.2d 767," with instructions that if the court determined it was "substantially identical to a prior petition, the repetitious petition must be denied." (Id., p. 107.) On August 31, 2010, the Court of Appeal made that determination and denied the writ. (Id., p. 109.)

The California Supreme Court issued its ruling on Booth's habeas corpus petition on September 15, 2010, stating in its entirety: "The petition for writ of habeas corpus is denied. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)" (Dkt No. 12-2, p. 111.)

Booth filed this federal habeas Petition two months later, on November 15, 2010 (amended January 14, 2011), repeating the same grounds as those he had presented in his 2008 Petition. By Notice filed January 27, 2011, the undersigned Magistrate Judge informed Booth:

> A review of the First Amended Petition reveals that Petitioner has not alleged exhaustion as to claims one, two, four, five, six, seven eight, nine, ten, and eleven. . . . **Petitioner must allege exhaustion in order to proceed with his claims.** Having preliminarily determined

---

[3] To the extent Booth's Ground Nine in his 2008 and 2010 Petitions could be construed as entailing a request that this Court permit discovery or hear evidence on this issue, the request will be moot should the R&R recommendations be adopted. A similar request associated with his 2008 Petition to obtain Imperial County African-Americans' jury service records was denied. (2008 Petition, Dkt Nos. 16,19.)

> the petition contains unexhausted claims, the Court notifies Petitioner of the possible dismissal of his petition.

(Dkt No. 6, 1:25-2:2 (emphasis in original).)

Rather than allege exhaustion, Booth's response to that Notice was the instant Motion For Stay And Abeyance To Exhaust Unexhausted Claims Of His Successive Petition Before The Lower State Courts. (Dkt No. 7.) Acknowledging the state judicial proceedings between the dismissal of his 2008 Petition and the filing of his 2010 Petition, which he pursued through the California Supreme Court's final denial of habeas relief in September 2010, he states: "Although petitioner Booth believes he's made a full round [of] collateral attack with exhausting federal claims before the California Courts, he did not have a successive petition pursuant to 28 USC 2241." (Dkt No. 7, 2:8-13.) That response may reflect his attempt to address the pleading obligation identified by the Court, but the cited code section applies to federal prisoners, not state prisoners.

## II.   DISCUSSION

### A.   Legal Standards For Federal Habeas Relief

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). Federal habeas relief is warranted only if the result of a claim adjudicated on the merits by a state court "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see* Bell v. Cone, 535 U.S. 685, 694 (2002).

Before a federal habeas court may reach the merits of a claim, the petitioner must satisfy certain threshold requirements. As pertinent here, these include exhaustion of state court remedies (*see* 28 U.S.C. § 2254(b),(c)) and compliance with the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") one-year statute of limitations, codified at 28 U.S.C. § 2244(d). Another impediment arises if the state courts relied on an adequate and independent state law ground for their denial of the claims. *See* Walker v. Martin, -- U.S. --, 131 S.Ct. 1120 (2011). For the reasons

discussed below, it is recommended the Court find consideration of Booth's federal claims is foreclosed by some or all of those obstacles, warranting both denial of his Motion and *sua sponte* dismissal of the 2010 Petition.

### B. Stay And Abeyance For Exhaustion Of State Court Remedies Not Justified

Federal habeas petitioners must exhaust their state judicial remedies before they can obtain relief from a state court conviction or sentence. 28 U.S.C. § 2254(b),(c); *see* Rose v. Lundy, 455 U.S. 509 (1982). While not a jurisdictional requirement (*see* Simmons v. Blodgett, 110 F.3d 39, 41 (9th Cir. 1997)), exhaustion is a prerequisite to a federal court's deciding the merits of the claims in the petitioner's favor. *See also* Wooten v. Kirkland, 540 F.3d 1019, 1023 (9th Cir. 2008). The petitioner "can always amend a mixed petition to delete the unexhausted claims, rather than return to state court to exhaust all his claims." Rose, 465 U.S. at 520.

For exhaustion purposes, California prisoners must first present their federal constitutional claims to the state's highest court on (1) direct review, such as by a petition for review, or (2) collateral review, such as by a petition for a writ of habeas corpus. *See* Reiger v. Christensen, 789 F.2d 1425, 1427-28 (9th Cir. 1986). The federal claim must be presented as such to afford state courts the first " 'fair opportunity' to apply controlling legal principles to the facts bearing upon" the claim. Anderson v. Harless, 459 U.S. 4, 6 (1982) (*per curiam*), *quoting* Picard v. Connor, 404 U.S. 270, 275-77 (1971). Alternatively, the prisoner can show "an absence of available state corrective process or circumstances rendering such process ineffective." Phillips v. Woodford, 267 F.3d 966, 974 (9th Cir. 2001) (if " 'a return to state court would be futile,' " a claim can be considered exhausted).

Although federal courts may not adjudicate mixed petitions, they have discretion to stay a mixed petition to permit exhaustion of state court remedies. Rhines, 544 U.S. at 273-77. Stay and abeyance is warranted only "in limited circumstances:" (1) "the petitioner had good cause for his failure to exhaust"; (2) "his unexhausted claims are potentially meritorious"; and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 277-78. When a petitioner voluntarily dismisses his mixed petition and returns to state court to exhaust the unexhausted claims, as Booth elected to do with his 2008 Petition, he may thereafter file a new federal

\\

petition containing all the exhausted claims, but it will be subject at that later time to all other procedural requirements, such as AEDPA timeliness.

After dismissal of his 2008 Petition, Booth returned to state court and ultimately presented all his federal claims in a February 22, 2010 habeas petition to the California Supreme Court. (*See* Dkt No. 12-1, pp. 20-67.) Although that court rejected the petition without reaching the merits, he technically gave that court the "opportunity" to pass on those claims before returning to federal court with his 2010 Petition, altering his circumstances compared to the posture of the case when he filed his 2008 Petition. In his Opposition to the Motion, Respondent nevertheless characterizes it as "a repeat of Petitioner's previous motion for stay in his prior federal case," arguing "[o]f the eleven claims made by Petitioner, it appears only one claim has been exhausted," and contending: "This is the same posture as in Petitioner's previous federal matter." (Dkt No. 12, 9:16-18.)

The state's highest court relied on In re Swain, 34 Cal.2d 300, 304 (1949) in its summary denial of Booth's habeas petition, without elaborating the significance of that citation. The Swain court imposed a procedural requirement a state habeas petitioner must satisfy before obtaining a ruling on the merits: "We are entitled to and we do require of a convicted defendant that he allege with particularity the facts upon which he would have a final judgment overturned **and** that he fully disclose his reasons for delaying in the presentation of those facts. . . ." Swain, 34 Cal.2d at 304 (emphasis added). Respondent interprets the Swain citation as signaling a failure to exhaust his federal claims on both scores -- pleading vagueness and failure to justify delay in presenting those claims. Emphasizing the particularity of pleading requirement, Respondent argues Booth "had the ability to re-file a petition and state his claims with more particularity, which means the claims are not exhausted." (Dkt No. 12, 12:7-8.) However, Respondent identifies no example of a pleading vagueness defect. Booth's habeas petition to the California Supreme Court and both his federal petitions present the same claims in essentially the same manner. Those articulations elaborate in ample detail the factual bases for his claims, irrespective of their merits for habeas relief purposes. This Court would find Booth satisfied the presentation component of exhaustion by giving the state's highest court the opportunity to address his federal claims.

\\

1    Instead, this Court would construe the California Supreme Court's citation to Swain as its rejection of Booth's petition on procedural grounds for failure to explain and justify his delay in seeking collateral relief. Procedural default is a doctrine related to but distinct from exhaustion, as discussed below. If a petitioner presented a federal claim to a state court in a procedural context that caused the court to decline to consider the merits, subsequent federal habeas review can be barred independently of a failure to exhaust. See Cooper v. Neven, 641 F.3d 322 (9th Cir. 2011.) In any event, Booth fails to make the necessary showing to justify a stay. Not only does he show no "good cause" (*see* Rhines, 544 U.S. 269), but also granting a stay purportedly for exhaustion purposes would be futile in his circumstances. A return to state court for further, duplicative proceedings would undoubtedly meet the same fate as before. Booth's Motion for stay and abeyance should be **DENIED**.

### C. *Sua Sponte* Dismissal With Prejudice Is Warranted

As demonstrated below, even if Booth had exhausted his state court remedies, he still faces insurmountable obstacles to obtaining any federal habeas relief. In particular, the AEPDA statute of limitations expired before Booth filed his 2010 Petition, and the Swain procedural bar should be deemed an adequate and independent state law ground foreclosing review. It is recommended that the Court *sua sponte* address those obstacles now, in the interest of judicial economy, rather than postpone an inevitable result. Respondent has advised the Court: "Given the time lapse, Respondent would file a motion to dismiss on untimeliness." (Dkt No. 12, p. 14, n.6; *see* Id., pp. 13-14.).

#### 1. A Merits Consideration Of Booth's Claims Is Time-Barred

Booth's federal limitations period within which to file a habeas petition began to run from "the date on which the judgment of conviction [became] final by the conclusion of direct review."[4] 28 U.S.C.A. § 2244(d)(1)(A). Absent statutory or equitable tolling, a state prisoner has just one year thereafter within which to file a petition in federal court. Id.

\\

---

[4] None of the other codified triggering dates apply here: an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States" belatedly removed (28 U.S.C. § 2244(d)(1)(B)); "the date on which the constitutional right was initially recognized by the Supreme Court, if . . . newly recognized . . . and made retroactively applicable to cases on collateral review" (28 U.S.C. § 2244(d)(1)(C)); or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" (28 U.S.C. § 2244(d)(1)(D)).

Statutory tolling of the AEDPA limitations period is available for periods during which the petitioner was properly pursuing collateral relief in the state courts. 28 U.S.C. § 2244(d)(2) ("The time during which a *properly filed* application for *State* post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation . . . .") (emphasis added). Assuming the exercise of diligence, the statutory clock pauses from the time "the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge." Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999) (footnote omitted). "Under California's indeterminate timeliness rule, '[a]s long as the prisoner filed a petition for appellate review within a "reasonable time," he c[an] count as "pending" (and add to the 1-year time limit) the days between (1) the time the lower state court reached an adverse decision, and (2) the day he filed a petition in the higher state court.' " Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010) (*per curiam*), *quoting* Evans v. Chavis, 546 U.S. 189, 193 (2006). The Supreme Court has cautioned against interpreting California's timeliness rule in a manner that deviates significantly from the 30-day to 60-day periods that Court has found governs in "most states." Chavis, 546 U.S. at 192-95; *see* Chaffer, 592 F.3d at 1048, 1046 (observing that unjustified or inadequately explained intervals between post-conviction filings "substantially longer than the '30 to 60 days' that 'most States' allow for filing petitions" are frequently found to precluded tolling, and holding that gaps of 115 days and 101 days without adequate explanation of the delays, as required under California law by Swain, 34 Cal.2d 300, did not support statutory tolling).

In California, "[s]ubstantial delay is measured from the time the petitioner or counsel knew, or reasonably should have known, of the information in support of the claim and the legal basis for the claim." In re Robbins, 18 Cal.4th 770, 787 (1998). In this case, Booth indisputably knew the factual and legal bases for all the claims in his 2010 Petition no later than the filing of his 2008 Petition on December 31, 2008. He also knew he had not pursued post-conviction relief in the state courts on nearly all of them, as evidenced by his concurrent motion to stay the 2008 Petition. Under the most generous construction of the procedural history described above, the AEDPA limitations period began to run in his case on April 3, 2008, calculated by adding the 90 days within which he could have filed a *certiorari* petition in the United States Supreme Court to the January 3, 2008 California Supreme Court denial of his Petition For Review of his final sentencing following the Cunningham decision,

concluding direct review. *See* <u>Bowen v. Roe</u>, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (when a petitioner sought direct review in the California Supreme Court, the period of "direct review" includes the ninety-day period after denial of relief within which a petitioner can file a petition for a writ of *certiorari* in the United States Supreme Court, even if the petitioner did not do so). Absent tolling, Booth's AEDPA deadline accordingly passed on April 3, 2009.

      Although Booth's November 15, 2008 Petition can be construed as filed within the AEDPA one-year limitations period, the Court denied his request to stay and hold that petition in abeyance and dismissed it on August 12, 2009. The mere filing of a federal petition does not trigger statutory tolling. <u>Rhines</u>, 544 U.S. at 276. "[A]n application for federal habeas relief is not an application for State post-conviction or other collateral review," and the statute of limitations continues to run without pause while a federal habeas petition is pending, in the absence of some other basis for tolling. <u>Duncan v. Walker</u>, 533 U.S. 167, 181-82 (2001) ("Section 2244(d)(2) therefore did not toll the limitations period during the pendency of [petitioner's] first federal habeas petition").

      Booth appears to have initiated no state court action -- "properly filed" or otherwise -- between April 3, 2008 and December 18, 2009, when he filed a habeas petition in Imperial County Superior Court, about eighteen months after direct review had concluded. "AEDPA's statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval." <u>Nino</u>, 183 F.3d at 1006. That filing date fell after his April 3, 2009 AEDPA deadline had already passed. The expired limitations period cannot be revived: "[T]ime limits, no matter their form, are 'filing' conditions" that "go to the very initiation of a petition and a court's ability to consider that petition." <u>Lakey v. Hickman</u>, 633 F.3d 782, 785 (9th Cir. 2011), *quoting* <u>Allen v. Siebert</u>, 552 U.S. 3, 5-6 (2007); *see also* <u>Jiminez v. Rice</u>, 276 F.3d 478, 482 (9th Cir. 2001) (statutory tolling is not available if the first state habeas petition is filed after the limitations period has expired, and that delay "result[s] in an absolute bar to refiling after his state claims were exhausted"). The Court had cautioned Booth in its August 2009 Order denying his stay and abeyance motion that choosing the option to return to state court to exhaust his unexhausted claims carried the risk that should he thereafter return to federal court, "all his claims may be barred by the statute of limitations." (2008 Petition, Dkt No. 24, 7:25-8:3.)

Moreover, as further confirmation this Court's consideration of the merits of Booth's 2010 Petition is conclusively time-barred, the time between filings in the California courts does not count under the "pending" language of 28 U.S.C. § 2244(d)(2) if the state courts ultimately find the petition was untimely.[5] *See* Pace v. DiGuglielmo, 544 U.S. 408, 417, 413-14 (2005) (holding that statutory tolling of AEDPA's one-year statute of limitations while a "properly filed" application for state post-conviction relief is pending is not available when the state post-conviction petition is dismissed as untimely). The Ninth Circuit applied Pace in Bonner v. Carey, 425 F.3d 1145 (9th Cir. 2005) (holding that a state petition which is ultimately dismissed by California courts as untimely was neither "properly filed" nor "pending" during the time it was under consideration by the state courts), *amended*, 439 F.3d 993; *see also* White v. Martel, 601 F.3d 882, 883-84 (9th Cir. 2010) (an untimely petition in state court "must be treated as improperly filed, or as though it never existed, for purposes of section 2244(d)," and consequently, it does not toll the AEDPA limitations period.)

The California Supreme Court relied on Swain in support of its summary denial of Booth's habeas petition, a case standing for the proposition, as pertinent here, that excessive unexplained delay in seeking relief is a ground for rejecting a petition. *See* Carey v. Saffold, 536 U.S. 214 (2002) (an "unreasonable" delay in presenting habeas claims, as that term is defined under California law, makes the application for state post-conviction relief untimely and not "pending" for AEDPA statute of limitations purposes during that period of delay or while the untimely application awaited a ruling in the state courts). "What we intimated in *Saffold* we now hold: When a postconviction petition is untimely under state law, 'that is the end of the matter' for purposes of § 2244(d)(2)." Pace, 544 U.S. at 413-14, *quoting* Saffold, 536 U.S. at 236. Booth's 2010 Petition was filed without any statutory tolling having delayed the running of the limitations period in his case on April 3, 2009. The procedural default import of the state courts' untimeliness finding is discussed below.

\\

---

[5] If the petitioner files a new habeas petition at each California court level, the application is "pending" during the time between those filings, as long as they were filed within a "reasonable time" after denial at the lower level *and* the petitions were not denied on the basis of California's untimeliness rule. Carey v. Saffold, 536 U.S. 214, 217, 226 (2002). If the California courts ultimately dismiss the petition as untimely, however, it was neither "properly filed" nor "pending" while under consideration by the state courts for AEDPA tolling purposes. Bonner v. Carey, 425 F.3d 1145, 1149 (9th Cir. 2005), *amended* 439 F.3d. 993 (9th Cir. 2006).

Even if no statutory tolling is available, a petitioner may be entitled to equitable tolling if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," causing the untimeliness. Pace, 544 U.S. at 418. Booth suggests no basis for equitable tolling, and the procedural history reveals none. Therefore, even if he had exhausted his federal claims, it is recommended the Court find the AEDPA one-year statute of limitations forecloses consideration of their merits and *sua sponte* **DISMISS** the 2010 Petition on that ground.

## 2. **Booth's Claims Are Procedurally Defaulted**

Even if Booth had exhausted his claims and could avoid the statute of limitations obstacle to federal habeas review, it is recommended the Court find he procedurally defaulted them under adequate and independent state law, a separate dispositive basis for dismissal. "Exhaustion and procedural bar are closely related, but distinct, doctrines."[6] Cooper, 641 F.3d at 327. "In addition to the exhaustion requirement, a federal court may not hear a habeas claim if it runs afoul of the procedural bar doctrine." Id.. Either finding is adequate to support dismissal of a federal habeas petition, and either moots the need for the district court to address the other doctrine. Id. at 328. As with exhaustion, to overcome procedural default, the petitioner must show good cause and prejudice. Walker, 131 S.Ct. at 1127; *see* Cooper, 641 F.3d at 328 ("For both kinds of default, the relevant question is whether [the petitioner] can show cause and prejudice to excuse the error. If he can, either form of default would be excused") (citations omitted). The "good cause" showing must involve an "objective factor outside of a prisoner's control." Id. (citations omitted). A petitioner's "prejudice" showing requires a demonstration "that the errors . . . worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." Id. (citations omitted). Booth attempts no showing of either element.

"A federal habeas court will not review a claim rejected by a state court 'if the decision . . . rests on a state law ground that is independent of the federal question and adequate do support the judgment.' " Walker, 131 S.Ct. at 1127, *quoting* Beard v. Kindler, 588 U.S. --, 130 S.Ct. 612, 615

---

[6] "[A] finding of procedural bar [can] incorporate[] claims that were denied by the state courts on procedural grounds as well as unexhausted claims that would be considered untimely if [petitioner] attempted to exhaust them now. . . . . The latter kind of claim is technically exhausted but procedurally defaulted." Cooper, 641 F.3d at 328, *citing* Coleman v. Thompson, 501 U.S. 722, 732 (1991).

(2009) *quoting* Coleman v. Thompson, 501 U.S. 722, 729 (1991). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Id., *citing* Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977). "State procedural rules must be both independent and adequate in order to bar federal habeas review." Cooper, 641 F.3d at 327.

The Superior Court expressly found Booth's "petition is untimely" in its June 22, 2010 denial of collateral relief. (Dkt No. 12-1, p. 122.) Three months later, the California Supreme Court substantiated procedural default of all Booth's claims when it cited Swain, 34 Cal.2d 300, in declining to reach the merits of his claims. (Dkt No. 12-2, p. 111.) A citation to Swain signals an adequate state-law ground for federal recognition of procedural default.

> It has long been required that a petitioner explain and justify any significant delay in seeking habeas corpus relief. "[I]t is the practice of this court to require that one who belatedly presents a collateral attack such as this explain the delay in raising the question." (*In re Swain* (1949) 34 Cal.2d 300.) [Footnote omitted.] In *Swain*, we noted that such explanation was "particularly necessary" where a petitioner has made prior attacks on the validity of the judgment without raising the issues. ( *Ibid.*)

In re Clark, 5 Cal.4th 750, 765, 783 (1993) (parallel citations and footnotes omitted) ("Our decisions have consistently required that a petitioner explain and justify any substantial delay in presenting a claim," and "fully disclose his reasons for delaying in the presentation of the facts upon which he would have a final judgment overturned").

Concerning the independence of an adequate state law for purposes of procedural default, the California Supreme Court has observed: "Decades before development of the federal case law [regarding habeas review of state prisoners' claims], we recognized and imposed procedural bars as a means of protecting the integrity of our own appeal and habeas corpus process." Robbins, 18 Cal.4th at 779 n.1 (emphasis omitted), *citing, inter alia*, Swain, 34 Cal.2d at 304 as "barring habeas corpus claim when the petitioner failed to 'fully disclose his reasons for delaying in the presentation of [facts asserted as a basis for relief]." The United States Supreme Court acknowledges the "leading decisions describ[ing] California's timeliness requirement" are "firmly established and regularly followed," and are adequate to foreclose federal habeas review. Walker, 131 S. Ct. at 1127-28, *discussing* Robbins, 18 Cal.4th 770.

For all the foregoing reasons, it is recommended the Court find Booth's claims must be rejected as procedurally defaulted on adequate and independent state law grounds, in addition to and independently of their untimeliness under the AEDPA statute of limitations, foreclosing federal habeas review.  Booth has already completed one full but unsuccessful round of review in the state courts. In these circumstances, a stay of the proceedings would be futile and should be **DENIED**, and an Order *sua sponte* **DISMISSING** the Petition with prejudice is warranted.

### III.  CONCLUSION AND RECOMMENDATIONS

The Court submits this Report and Recommendation to United States District Janis L. Sammartino under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Motion For Stay And Abeyance be **DENIED** and that the Court *sua sponte* **DISMISS** the Petition in its entirety, with prejudice.

**IT IS FURTHER RECOMMENDED** the Court issue an Order:  (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** no later than **August 29, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than **September 12, 2011**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See* Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED:  July 25, 2011

_____

**CATHY ANN BENCIVENGO**
United States Magistrate Judge